

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| JOHNDEL INTERNATIONAL, INC. dba JMI-EDISON,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICE OF PUBLIC ACCOUNTABILITY, GUAM INTERNATIONAL AIRPORT AUTHORITY, and Aircraft Services International, Inc., dba MENZIES AVIATION,<br><br>Defendants. | CIVIL CASE NO. CV0095-22<br><br><br>**DECISION AND ORDER RE JMI'S PETITION FOR JUDICIAL REVIEW** |

The Court here reviews the Public Auditor's dismissal of Plaintiff JMI-Edison, Inc.'s (JMI) procurement appeal of Defendant Guam International Airport Authority's (GIAA) selection for RFP05-FY21. Having reviewed the procurement record, the parties' briefs, and the relevant laws, the Court finds that the Public Auditor improperly dismissed JMI's procurement appeal. The Court therefore reverses the Public Auditor's Decision and Order dismissing JMI's appeal and remands the matter.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. Solicitation and Award

In RFP05-FY21, GIAA sought management and support services for its baggage conveyance system. OPA-PR-0012, 0014. According to GIAA's Request for Proposals, "it is the policy of GIAA to award proposals to Offerors duly authorized and licensed to conduct business on Guam." OPA-PR-0109.



JMI and Defendant Menzies Aviation (Menzies) each submitted proposals. GIAA awarded the bid to Menzies and informed JMI that it was not the best-qualified offeror. OPA-PR-0120, 0247, 0266, 0284.

Following JMI's unsuccessful bid, JMI president Ed Ilao contacted the Contractor's Licensing Board (CLB) about the licensing status of Menzies' various operations. OPA-PR-0124. CLB Administrative Officer Maria Perez responded that none of the listed businesses carry licenses with the CLB. OPA-PR-0129 - 30.

### B. JMI's Protest

JMI submitted a procurement protest and asserted that Menzies lacked the necessary licenses and was, therefore, a non-responsive bidder. OPA-PR-0132 - 33. JMI also protested the lack of a complete procurement record. *Id.*

GIAA denied JMI's protest. OPA-PR-0135 - 37. GIAA determined that JMI filed an untimely protest, and that Menzies was a responsive, qualified, and responsible offeror. *Id.*

### C. JMI's Appeal to the OPA

JMI appealed GIAA's denial to the OPA. OPA-PR-0002. Before the OPA, Menzies and GIAA filed separate motions to dismiss for lack of subject matter jurisdiction, and Menzies moved for summary judgment on the issue of the required licenses under the RFP. OPA-PR-0892, 896, 906. JMI filed oppositions to these motions. OPA-PR-0932, 955.

On December 23, 2021, JMI filed supplemental authority to these motions. OPA-PR-0983. Specifically, JMI submitted a document on CLB letterhead and signed by CLB's Executive Director, Cecil Orsini, indicating that Menzies lacked the required contractor's license and that RFP005-FY21 would require the awarded contractor to maintain a valid license from the

ORIGINAL

CLB. OPA-PR-0986 to 87. The document referenced a case number and was entitled "Findings & Decisions." OPA-PR-0986.

During the scheduled motion hearing on December 27, 2021, the Public Auditor continued the hearing to January 6, 2022, upon GIAA's request for more time to review the supplemental submission. OPA-PR-0994.

At the January 6 motion hearing, GIAA began arguments on its motion. OPA-PR-1010. As the discussion shifted to whether the proposed contract required a contractor to be licensed with the CLB, the Public Auditor halted the arguments. "What I'll do is I will continue this motion hearing for three weeks and give everybody an opportunity to please go to the CLB to determine what's going on there." OPA-PR-1057. The Public Auditor continued the hearing, including the hearing on Menzies' summary judgment motion, to January 27, 2022. OPA-PR-1058.

On January 24, 2022, Menzies filed a response to the supplemental authority filed by JMI. OPA-PR-1068. This filing contained responsive material from a Sunshine Act request submitted to the CLB. *Id.* It attached emails between Ilao and Orsini in which Ilao addressed Orsini as "bro" and asked if the CLB could sign the letter submitted as supplemental authority providing that it would "really help our cause." OPA-PR-1068 - 73. Lastly, Menzies asked the Public Auditor to "disregard the CLB's December 22, 2021 'Findings & Decisions' and not consider the document . . . ." OPA-PR-1073. Furthermore, Menzies asked that the Public Auditor "order whatever sanctions would be appropriate against JMI and take any other appropriate action should it determine that Mr. Ilao created evidence and offered that created evidence to the OPA for the purpose of misleading the Public Auditor in this Procurement Appeal." *Id.*



ORIGINAL

The Public Auditor held its continued hearing on GIAA and Menzies' dispositive motions on January 27. OPA-PR-1183. The Public Auditor opened the hearing by questioning JMI:

> HEARING OFFICER: Mr. Razzano, have you had a chance to review the filing made by Mr. Johnson[1] the other day?
>
> MR. RAZZANO: I have, Your Honor.
>
> OPA: Do you have a motion for us this morning?
>
> MR. RAZZANO: I mean, my only motion would be to set the case for trial and to issue dates for exhibits and witnesses. . . .
>
> HEARING OFFICER: I'm disappointed. We'll set the record. I guess we'll move forward with the motion. Your motion, Mr. Johnson . . . .
>
> MR. JOHNSON: You mean with argument on the motion, Your Honor?
>
> HEARING OFFICER: Yes. Just so we can set the record so that Mr. Razzano and Mr. Walsh will have something they can take up.

OPA-PA-1185 - 87. Menzies proceeded to argue that the Public Auditor could not rely on the CLB document as it was a favor to JMI. Def. OPA's Submission of Certified Transcripts, Jan. 26, 2022 Tr. at 7 (Mar. 31, 2023). It also argued, in support of its underlying motion, that no license was required. *Id.* at 8. Menzies concluded by asking that the Public Auditor rule that no CLB license was required or alternatively, wait for the CLB to make a determination on the license issue. *Id.* Notably, Menzies did not specifically argue during the hearing that any sanction should be imposed.

The Public Auditor then allowed GIAA to comment. GIAA noted that "there are many issues over at the CLB . . . And until those are resolved, we just don't think this protest appeal is

---

[1] Referencing Attorney Joseph Razzano, counsel for JMI, and Attorney R. Marsil Johnson, counsel for Menzies.

ORIGINAL

properly before this body, at least as to that basis." *Id.* at 9. GIAA then reiterated its request that

the OPA "dismiss this appeal [and] allow the parties to resolve the issues at the CLB . . . ." *Id.* at

10. GIAA also made no request for sanctions related to the CLB document.

JMI was then allowed to orally respond to Menzies and GIAA's arguments. *Id.* at 10 -

14. JMI made no arguments relative to any potential sanction of dismissal.[2]

The Public Auditor then announced the ruling. He remarked being dismayed by the CLB

and then said the "motion to dismiss is granted." *Id.* at 19. In announcing his decision, the

Public Auditor did not reference misconduct committed by JMI.

The Public Auditor later issued its Decision and Order which dismissed the matter as a

sanction for JMI's misconduct regarding the CLB's Findings & Decisions. OPA-PR-1189 - 95.

The Public Auditor stated it was "undisputed" that Ilao asked the CLB's Director to issue the

Findings & Decisions. OPA-PR-1192. It also noted that "JMI has not submitted evidence which

would suggest that the CLB Board voted to authorize the issuance of the 'Findings and

Decisions.' As such, the document represents a fraud on this tribunal . . . ."[3] OPA-PR-1193.

The Public Auditor based the dismissal on its inherent authority to dismiss a claim when a party

has perpetrated a fraud on the court, and under its powers to promote the integrity of the

procurement process. OPA-PR-1192 – 93.

### D. JMI's Appeal to the Court

---

[2] In its brief, the OPA cites JMI's remark on rebuttal that "nothing nefarious" happened to demonstrate that JMI was trying to defend its involvement in the CLB document. In reviewing the entire context of that comment, however, it appears JMI was stating that because it produced documents received by it under the Sunshine Act, there was full transparency: "[T]he Sunshine Act works. The law is being followed and all documents that I received with respect to this have been produced. And so there is nothing nefarious that's going on." *Id.* at 10.

[3] The Public Auditor does not define "fraud on the court."

ORIGINAL

Following the OPA's dismissal, JMI commenced the present action and argued: (1) the OPA's dismissal of JMI's protest was arbitrary, capricious, clearly erroneous, or contrary to law; (2) the OPA's failure to find that Menzies was a non-responsive and non-responsible bidder was arbitrary, capricious, clearly erroneous, or contrary to law; and (3) the OPA's failure to review and find that GIAA did not keep the procurement record in accordance with law was arbitrary, capricious, clearly erroneous, or contrary to law. Compl. (Feb. 10, 2022).

## II.    LAW AND DISCUSSION

The Public Auditor made a determination that JMI committed a fraud upon the OPA and its proceedings. That finding is one of fact; it cannot be reversed unless it was arbitrary, capricious, fraudulent, clearly erroneous, or contrary to law. 5 GCA § 5704(a). However, a different standard applies when reviewing procedural due process issues, which is the central question here. Whether an administrative tribunal afforded procedural due process protections is a question of law; for legal determinations, the Public Auditor's decision is "entitled to great weight and the benefit of reasonable doubt, although it shall not be conclusive on any court having competent jurisdiction." 5 GCA § 5704(b); *DFS Guam L.P. v. A.B. Won Pat Int'l Airport Auth., Guam*, 2020 Guam 20 ¶ 43; *Perez v. Civil Serv. Comm'n*, 2018 Guam 25 ¶ 26; *Sule v. Guam Bd. Of Dental Examiners*, 2008 Guam 20 ¶ 13 (question of denial of a fair hearing and due process is a question of law). Under this standard, "ultimately the standard of review in the Superior Court is *de novo.*" *DFS Guam L.P.*, 2020 Guam 20 ¶ 43 (citations omitted).

### A. The OPA Did Not Afford JMI an Opportunity to Address the Imposed Sanction.

The Court first addresses JMI's argument that the OPA deprived it of due process in not allowing JMI a meaningful opportunity to address the sanction. The OPA, Menzies, and GIAA all argue that JMI had such notice.



Procedural due process provides the right to have "a reasonable opportunity to know the claims of the opposing party, and to meet those claims" as well as the assurance that the hearing will be "conducted in accordance with fundamental principles of fair play and applicable procedural standards established by law." *Port Transportation v. Guam Civ. Serv. Comm'n*, 2008 Guam 18 ¶ 30. The Guam Administrative Rules ensure these protections will be afforded in procurement appeals before the public auditor by requiring written notice of the hearing stating the "nature and purpose of the proceedings." 2 Guam Admin. R. & Regs. § 12108(c).

The chronology of the OPA proceedings lacks any clear signal to JMI that the OPA was considering the potential sanction of dismissal due to misconduct. The Public Auditor scheduled the January 27 hearing to address GIAA's and Menzies' dispositive motions. Neither of those written motions sought dismissal based on JMI's involvement in the CLB document. Menzies' closing request in its supplemental filing asked to strike the supplemental authority and for "whatever sanctions," but the Court does not find this language sufficient to place JMI on notice that the Public Auditor would be considering the drastic sanction of dismissal at the January 27 hearing.

The statements at the hearing also did not flag a potential dismissal sanction. When the hearing started on January 27, the Public Auditor referenced Menzies' filing and asked JMI, "Do you have any motion for us this morning?" Def. OPA's Submission of Certified Transcripts, Jan. 26, 2022 Tr. at 4-5. With the benefit of hindsight, this question could have prompted JMI to explain its role in the issuance of the CLB's Findings & Decisions. However, because the Public Auditor did not preface this question with any statement about misconduct or potential sanctions, and the issues scheduled for hearing were the opposing parties' motions on jurisdiction and



licensing, it's unclear what motion the Public Auditor was intimating JMI to make. JMI's response seeking a trial on the merits reflects its cluelessness.

As the hearing progressed, and counsel was allowed to make arguments, none of the arguments made by GIAA or Menzies delved into a potential dismissal based on the CLB document. Consequently, none of JMI's arguments related to a potential dismissal on those grounds.

Throughout the hearing, the Public Auditor made no express statements previewing his ultimate sanction of dismissal. Only at the end of the hearing did the Public Auditor reference "subor[ning] testimony." Def. OPA's Submission of Certified Transcripts, Jan. 26, 2022 Tr. at 19. However, even if JMI had an opportunity at this final stage of the hearing to understand the basis of the OPA's decision and given a reasonable opportunity to defend its position, the Public Auditor announced the dismissal of JMI's appeal based on the pending motions, neither of which were grounded in JMI's alleged misconduct. Only after the hearing, when the OPA released its Decision and Order, did the Public Auditor reveal that he dismissed JMI's appeal as a sanction related to the CLB document.

In summary, from prior to the hearing to its conclusion, JMI lacked information that its involvement in the creation of the CLB document would be relied upon by the OPA as grounds to dismiss its procurement appeal. The motions did not seek such dismissal, and the Public Auditor did not warn JMI of the dismissal sanction. Not being prompted to defend itself, JMI never addressed such a sanction either. Overall, JMI lacked a reasonable opportunity to be heard on the issue.

### B. The OPA Imposed a Severe Sanction without Considering Lesser Remedies and without Making Necessary Findings.

Next, the Court addresses the impact of JMI's lack of notice of the possible sanction or an

ORIGINAL

opportunity to respond. The OPA contends that it has broad discretion to issue sanctions in proceedings before it and to ensure the integrity of the procurement process.

In determining whether the OPA's Decision and Order can be upheld despite the due process error, the Court reviews two cases used by the OPA in both its Decision and Order and in its Opening Brief: *Stephen Slesinger, Inc. v. Walt Disney Co.*, 66 Cal.Rptr.3d 268 (Ct. App. 2008) and *Rockdale Mgmt., Inc. v. Shawmut Bank, N.A.*, 638 N.E.2d 29 (Mass. 1994) (referenced hereinafter as *Slesinger* and *Rockdale*). Using these cases, the OPA contends that courts have an inherent authority to dismiss a claim when a party has perpetrated a fraud on the Court. The Court agrees that these cases and others shed light on what courts must consider when evaluating a potential dismissal for a fraud upon the Court.

First, both cases acknowledge that the responding parties were afforded their fundamental rights of due process. In *Slesinger*, the plaintiff's investigator broke into the defendant's office buildings and trash receptacles to retrieve thousands of confidential documents. 66 Cal.Rptr.3d at 272. The court held a five-day evidentiary hearing over a dismissal motion. In discussing courts' exercise of their inherent power to terminate an action for misconduct, the California court declared that extreme measures such as dismissal "restore[] balance to the adversary system when the misconduct of one party has destroyed it. And . . . such power can be exercised with full procedural due process: the trial court held a noticed evidentiary hearing . . . ." *Id.* at 288.

In *Rockdale,* a party forged a letter, referenced the forged letter in discovery, and testified as to the authenticity of the letter. 638 N.E.2d at 31. The party later admitted to the forgery but only after the purported author of the letter revealed the deception. *Id.* The trial court held a hearing on a motion for default or dismissal but did not take in additional evidence at the hearing.

ORIGINAL

The Massachusetts Supreme Court held that the admission of forgery obviated the need for an evidentiary hearing. *Id.* at 32.

In this case, as explained in the prior section, the Public Auditor determined that JMI committed a fraud on the tribunal without affording JMI a chance to respond. Even though JMI proffered the document and the Public Auditor claimed that certain facts were undisputed, there was no opportunity given to JMI to present its position on a dismissal sanction or provide evidence regarding its involvement in the creation of the CLB document.

Second, as explained in *Slesinger*, courts must examine the availability of alternatives less severe than dismissal. "The sound exercise of discretion requires the judge to consider and use lesser sanctions unless the court's authority cannot possibly be otherwise vindicated." 66 Cal. Rptr. 3d at 286. This mirrors general Guam law standards on dismissal and hearing cases on their merits. In *Lujan v. McCreadie*, 2014 Guam 19, for example, the Guam Supreme Court reviewed whether the trial court prematurely dismissed a case for lack of prosecution. The court opined, "courts are strongly encouraged to consider lesser sanctions before dismissal." *Id.* ¶ 24. *See also Guam Economic Dev. Auth. v. Affordable Home Builders, Inc.*, 2013 Guam 12 ¶ 11 (in considering an involuntary dismissal, courts must examine five factors including the availability of less drastic sanctions). Also, other courts apply this sentiment to administrative proceedings. *See King v. Dist. Columbia Water and Sewer Auth.*, 803 A.2d 966, 970 (D.C. 2002) (dismissal of an administrative claim is a drastic remedy). Here, while Menzies proposed the lesser sanction of striking the CLB document on more than one occasion, the OPA's Decision and Order did not consider or address other, lesser sanctions.

Third, a lesser sanction could have been appropriate because it is unclear if JMI engaged in a pattern of conduct that merited dismissal. The very definition of "fraud on the court," which

# ORIGINAL

the OPA's Decision and Order does not explain, serves as a compass for the tribunal in making such a severe decision. The term is defined in *Ramey v. Haverty Furniture Cos., Inc.*, 993 So.2d 1014 (Fla. App. 2008), another case cited by the OPA. *See* OPA-PR-1193.

> A "fraud on the court" occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion *some unconscionable scheme* calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense.

993 So.2d at 1018 (emphasis added).

*Slesinger* and *Rockdale* utilize a similar standard and stress that dismissal was warranted in those cases because of a scheme or pattern of misconduct. As stated in *Slesinger*, courts must "discern whether the plaintiff's *pattern* of conduct was so 'severe and deliberate' as to constitute extreme circumstances." 66 Cal.Rptr.3d at 286 (emphasis added). In turn, the court determined that test satisfied: "What emerged [from the five-day evidentiary hearing] was a portrait of litigation misconduct run riot . . . ." *Id.* at 272. Furthermore, in *Rockdale*, the Massachusetts Supreme Court emphasized that "it must be shown through clear and convincing evidence that a party's fraudulent conduct is part of a *pattern or scheme* to defraud." 638 N.E.2d at 32. The court also found this standard satisfied through evidence of the forgery, use of the forgery in discovery, and denial of the forgery. *Id.* at 31.[4]

In contrast, here, the Public Auditor cited JMI for influencing the creation of a document to gain an advantage in litigation. This single act may or may not be part of a pattern of misconduct

---

[4] *See also In re Paternity of Tompkins*, 518 N.E.2d 500, 507 (Ind. Ct. App. 1988) ("The doctrine of 'fraud on the court' . . . has been narrowly applied by the courts and appears to be limited to only the most egregious circumstances involving the courts. 7 Moore's Federal Practice ¶ 60.33. However, if a party establishes that an unconscionable plan or scheme was used to improperly influence the court's decision, and that such acts prevented the losing party from fully and fairly presenting his case or defense, then 'fraud on the court' exists.").

ORIGINAL

that satisfies the definition of a fraud on the tribunal. As there is no evidentiary record that details JMI's involvement in the CLB Findings & Decisions, this Court questions whether there is enough evidence to show JMI was involved in a pattern or scheme to defraud the Court, and therefore, enough of a justification for a dismissal of JMI's entire case.

As a last point, even though the Public Auditor's decision is entitled to great weight and the benefit of reasonable doubt, as explained in *Ramey,* such "rulings are given less deference when there is no evidentiary hearing and the . . . decision is based on the same cold document record that is before the reviewing court." 993 So.2d at 1018 (citations omitted). This Court has examined the filings and the transcripts in detail. The short string of correspondence between JMI and Orsini upon which the OPA relies to sanction JMI holds some weight. However, because JMI had no notice that OPA intended to rely upon that correspondence to dismiss the matter as a sanction and did not have a reasonable opportunity to proffer evidence to rebut the implications of that correspondence, the Court cannot simply defer to the Public Auditor's findings.

In summary, based on the authorities provided by the OPA, the Court finds that there is more to a dismissal stemming from a fraud on the court. The OPA should have afforded JMI an opportunity to respond, considered lesser sanctions, and examined whether JMI was involved in a pattern or scheme as required under the definition of a fraud on the court.

## III.   CONCLUSION AND ORDER

As the Public Auditor erred in dismissing JMI's procurement appeal, the Court reverses the Public Auditor's Decision and Order and remands this matter for further proceedings consistent with this Decision. On remand, the Public Auditor may proceed to determine, upon due notice, whether JMI committed fraud on the tribunal, and any other issue raised by JMI in its appeal such as the completeness of the procurement record and the merits of the action.



ORIGINAL

**SO ORDERED, 29 December 2023.**

HON. ELYZE M. IRIARTE
Judge, Superior Court of Guam

Appearing Attorneys:
Joseph C. Razzano, Esq., and Joshua D. Walsh, Esq., Razzano Walsh & Torres, P.C., for Plaintiff
      Johndel International, Inc. dba JMI-Edison
Mitchell F. Thompson, Esq., Thompson Thompson & Alcantara, P.C., for Defendant Office of
      Public Accountability
Anita P. Arriola, Esq., and William B. Brennan, Esq., Arriola Law Firm, for Defendant Guam
      International Airport Authority
Richard L. Johnson, Esq., and R. Marsil Johnson, Esq., Blair Sterling Johnson & Martinez, for
      Defendant Aircraft Services International, Inc. dba Menzies Aviation

# ORIGINAL